RECEIVED
IN LAKE CHARLES, LA.
APR 26 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JEFF SIMMONS, ET AL. | : | DOCKET NO. 2:10 CV 1846 |
| VS. | : | JUDGE MINALDI |
| SABINE RIVER AUTHORITY OF LOUISIANA, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure [Doc. 13], filed by the defendants, the Sabine River Authority of Louisiana ("SRA-L") and Entergy Services, Inc., Entergy Louisiana, LLC, Entergy Gulf States Louisiana, LLC, and Entergy Corporations (collectively "Entergy"). The plaintiffs, Jeff Simmons, *et al.* filed an Opposition [Doc. 34], and the defendants filed a Reply [Doc. 35] and a Sur-Reply [Doc. 44]. The court heard oral argument on the motion on April 11, 2012. Thereafter, the court took the matter under advisement.

## BACKGROUND

The Toledo Bend Dam is located on the Sabine River in Sabine Parish, Louisiana. The dam creates the Toledo Bend Lake, which stretches across the Texas-Louisiana Border. The Sabine River Compact Authority of Texas ("SRA-T") and the Sabine River Authority of Louisiana ("SRA-L") jointly operate the dam pursuant to a license issued to them by the Federal Energy Regulatory Commission ("FERC") under the authority of the Federal Power Act

1

("FPA").[1] The Project includes a reservoir, a dam, a hydroelectric plant, and several other facilities used for power generation.[2] The FERC license regulates most aspects of the planning, construction, and maintenance of the dam.[3] It also specifies minimum and maximum reservoir levels.[4]

As license-holders, SRA-L and SRA-T entered into a Power Sales Agreement with Entergy's predecessors.[5] The plaintiffs allege that the contract grants Entergy the right to oversee the generation of power on the river.[6]

In October of 2010, the plaintiffs filed this lawsuit against SRA-L, former SRA-L Director Linda Curtis Sparks, the Louisiana Department of Transportation and Development, and various Entergy defendants for damage to their property located in the lower Sabine River Basin. The crux of the complaint is that flood waters released from the dam on October 29 and 30, 2009 damaged the plaintiffs' property.[7] There are two ways to release water from the reservoir: (1) through the energy-producing hydroelectric turbines or (2) through the spillway gates.[8] The plaintiffs allege that the defendants negligently operated the spillway gates during the heavy

---

[1] Notice of Removal Ex. A, State Court Petition ¶ 5 [Doc. 1-4]; Mot. to Dismiss Ex. B, Final Analysis of Request to Raise the Project's Minimum Reservoir Elevation 1 [Doc. 13-2].

[2] *See* Mot. to Dismiss Ex. A, Federal Power Commission License 4 [Doc. 13-2].

[3] *See id.* at 4-11.

[4] *Id;* Mot. to Dismiss Ex. B, FERC Report on Request to Raise the Project's Minimum Reservoir Elevation [Doc. 13-2].

[5] *See* State Court Petition ¶ 5.

[6] *Id.*

[7] *See* State Court Petition ¶¶ 8, 14.

[8] *See* Mot. to Dismiss Ex. B, FERC Report on Analysis of Flood Notification and Reservoir Operation 43 [Doc. 13-2].

rainfall in October of 2009 by failing to open them soon enough and then releasing water from the reservoir too quickly, causing the water to flood their property.[9] They assert various theories of liability, including trespass, negligence, and unconstitutional taking, and their prayer for relief includes claims for damages and injunctive relief.[10]

The defendants contend that the plaintiffs' "allegations clearly ignore the operational control wielded by FERC [and] FERC's exclusive jurisdiction" over hydroelectric projects on navigable waterways.[11] Thus, they argue that the plaintiffs' claims are preempted by the FPA. They further contend that the court should dismiss the case under Federal Rule of Civil Procedure 12(b)(7) because the plaintiffs failed to join FERC, SRA-T, and the Sabine River Compact Administration ("SRCA")[12] as defendants, all of whom, they argue, are necessary parties to this action. Finally, the defendants assert that the plaintiffs' claims are prescribed and that their conspiracy claims and their claim for punitive damages should be dismissed for failure to state a claim upon which relief may be granted. Because the court agrees that the plaintiffs' claims are preempted by the FPA, it will not address the defendants' other arguments.

## FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all

---

[9] *See* State Court Pet. ¶ 14; Pls.' Mem. in Opp. to Defs. Mot. to Dismiss 5 [Doc. 32].

[10] State Court Petition ¶¶ 14-22.

[11] Mem. in Supp. of Defs.' Mot. to Dismiss 8.

[12] The Sabine River Compact Administration is an interstate agency created by the Sabine River Compact between Texas and Louisiana in 1952. The Compact grants SRCA authority to regulate the waterways of the Sabine River. *See* Tex. Water Code § 44.010.

reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006).

To avoid dismissal under a Rule 12(b)(6) motion, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## LAW AND ANALYSIS

Section 4(e) of the FPA authorizes FERC to issue licenses for the development of power "across, along, from, or in any of the streams . . . over which Congress has jurisdiction." 16 U.S.C. § 797(e). Section 10(a) of the Act further authorizes FERC to impose on licensees any condition it deems necessary to promote power development and to protect other public uses of the water. 16 U.S.C. § 803(a). These conditions preempt state law to the extent that it is impossible to comply with both or "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *California v. FERC*, 495 U.S. 490, 506 (1990).

Section 27 of the FPA contains a savings clause providing that:

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein. 16 U.S.C. § 821.

In *First Iowa Hydro-Electric Cooperative v. Federal Power Commission*, 328 U.S. 152, 175-76 (1946), the Supreme Court held that section 27 preserves only those state laws relating to proprietary rights to the use of water for irrigation, municipal, or other similar purposes. It does

4

not preserve state law relating to the control or use of water for power generation. Thus, the Court held that a licensee could not be required to obtain a state license as a prerequisite for operating a project licensed by FERC. Any such requirement, the court held, would give the states a "veto power" over federal projects that would undermine the comprehensive planning power that Congress intended to confer on FERC.

In *California v. FERC*, the Court reaffirmed the *First Iowa* Court's construction of section 27. 495 U.S. at 498-502. The case involved competing stream flow requirements in a creek from which a FERC-licensed hydroelectric plant drew water. *Id.* at 493. After FERC set a minimum flow rate requirement, the California Water Resources Control Board attempted to impose a higher minimum flow rate in order to protect the creek's fish. *Id.* at 494-95. The Court concluded unanimously that the state law requirement could not be given effect. *Id.* at 498. It reasoned that in setting the minimum stream flow requirement for the project, FERC balanced the project's potential effect on wildlife with its economic feasibility. *Id.* at 506. Allowing California to supplement FERC's stream flow requirement, the Court held, would disturb the balance struck by the federal requirement and thereby undermine Congress's choice to vest comprehensive planning and licensing authority over the project in FERC. *Id.* Taken together, *First Iowa* and *California v. FERC* stand for the proposition that the FPA preempts any state law requirement that interferes with FERC's comprehensive planning and licensing authority over hydroelectric projects in navigable waterways, except to the extent that those laws relate to proprietary water rights.

The plaintiffs' claims for injunctive relief present precisely the sort of challenge to FERC's planning authority as did the state law minimum flow requirement at issue in *California v. FERC*. The FERC license for the Toledo Bend Project specifies minimum and maximum

reservoir levels.[13] In 1999, a group of Sabine River Basin property owners requested that FERC modify the license to incorporate additional operational requirements related to flood control.[14] Specifically, the residents requested that FERC require SRA to draw down the reservoir earlier than it normally does when potential flooding is anticipated.[15] FERC denied the request.[16] It found that the dam could not be used for flood control of large storms because it would be impossible for SRA to safely reduce the reservoir level by an amount necessary to prevent flooding. Moreover, FERC found that permanently lowering the reservoir level would prevent power production and adversely affect recreational opportunities.[17] Accordingly, FERC declined to mandate any operational changes in the spillway for purposes of flood control.[18]

The plaintiffs' claims for injunctive relief effectively amount to attempts to use state tort law to have this court mandate the changes FERC denied. The plaintiffs characterize their complaint as addressing when and to what extent the spillway gates should be opened in

---

[13] *See* FERC License; Mot. to Dismiss Ex. B, FERC Report on Request to Raise the Project's Minimum Reservoir Elevation [Doc. 13-2]. The plaintiffs argue that the court should not consider the contents of the FERC license or FERC's Collaborative Reports in ruling on the Motion to Dismiss. Generally, in considering a motion to dismiss, the court must limit itself to the contents of the pleadings and the attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 498 (5th Cir. 2000). The defendants correctly note, however, that a court reviewing a Motion to Dismiss may also consider matters of which a court may take judicial notice, including matters of public record. *Telltabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Both the FERC license and FERC's collaborative reports are matters of public record, and the court may therefore properly consider it in passing on this motion. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that a district court did not err in taking judicial notice of publicly available documents and transcripts produced by the FDA).

[14] *See* Report on Analysis of Flood Notification and Reservoir Operation.

[15] *Id.* at 40.

[16] *Id.* at 35.

[17] *Id.* at 49, 52.

[18] *Id.* at 35.

anticipation of rainfall.[19] In particular, they allege that the defendants failed to adopt appropriate policies and procedures for the operation of flood gates that would effectively avoid catastrophic flooding and failed to maintain adequate storage capacity in the reservoir and seek an injunction directing SRA-L to "establish a protocol to open the flood gates at a time when the increased water flow will not flood the downstream properties of the plaintiffs."[20] This is precisely what FERC declined to do in 2003. Thus, any such mandate from this court arising out of state law would usurp FERC's "broad and paramount" regulatory authority over the project. *See California v. FERC*, 495 U.S. at 499. The plaintiffs' claims for injunctive relief are therefore preempted by the FPA under *First Iowa* and *California v. FERC*.

The plaintiffs argue that even if their claims for injunctive relief are preempted, Section 10(c) of the FPA expressly preserves their claims for monetary damages. Section 10(c) provides that "[e]ach licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor." 16 U.S.C. § 803(c) (2009).

The court, however, finds that section 10(c) of the FPA cannot reasonably be interpreted to preserve state law claims for damages arising out of conduct which FERC has expressly declined to prohibit. Because operators typically avoid acting in a manner that will expose them to liability, state law claims for damages arising out of the operation of a FERC-licensed dam have just as much potential to change the manner in which a dam is operated as do claims for injunctive relief. As such, they present just as much of an obstacle to FERC's comprehensive

---

[19] Pls.' Mem. in Opp. to Mot. to Dismiss 5.

[20] State Court Petition ¶¶ 14, 30.

7

planning authority as do the kinds of absolute prohibitions addressed in *First Iowa* and *California v. FERC*.

Interpreting section 10(c) to preserve the plaintiffs' claims in this case would effectively permit the plaintiffs to use state law to induce operational changes that FERC found to be contrary to the best interests of the project. Any such interpretation would stand in direct conflict with FERC's exclusive authority under section 10(a) to adopt a "comprehensive plan for improving or developing [the] waterway." "[W]hen interpreting a statute, it is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent." *Burnett c. Stewart Title, Inc.*, 635 F.3d 169, 172 (5th Cir. 2011) (internal citations omitted). Accordingly, the court finds that section 10(c) cannot be read to preserve state law claims for damages that interfere with FERC's authority to regulate and control the operation of its projects. Because the plaintiffs' claims for damages carry the potential to induce operational changes that FERC declined to mandate, they interfere with FERC's exclusive licensing authority and are preempted by the FPA.

## CONCLUSION

For the reasons state herein, the defendants' Motion to Dismiss will be granted, and the plaintiffs' claims will be dismissed with prejudice.

Lake Charles, Louisiana, this 25 day of April 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE